UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JACK WILLING, *et al.*,

    Plaintiffs,

v.

COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC., *et al.*,

    Defendants.

Case No. C06-1357RSL

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for partial summary judgment regarding the duty to defend filed by plaintiffs Jack and Cheryl Willing and Ron and Lisa Cole (Dkt. #24) and on a cross motion for summary judgment by defendants Community Association Underwriters of America, Inc. ("CAU") and American Alternative Insurance Company ("AAIC") (collectively, "defendants") (Dkt. #26). Plaintiffs seek a ruling that defendant CAU breached its duty to defend them in an underlying lawsuit. Defendants seek dismissal of all of plaintiffs' claims.

For the reasons set forth below, the Court grants plaintiffs' motion and denies defendants' motion.

ORDER REGARDING CROSS
MOTIONS FOR SUMMARY JUDGMENT - 1

## II. DISCUSSION

**A.   Background Facts.**

This is an insurance coverage dispute.  CAU is a small, privately held company located in Newtown, Pennsylvania that writes insurance policies for condominium and homeowners associations.  It acts as managing general agent for insurance companies including AAIC, located in Princeton, New Jersey, which actually issue the policies.

Plaintiffs Jack Willing and Ron Cole ("plaintiffs")[1] are condominium developers.  During the relevant time, they were board members of a condominium owners association, the Waverly Crest Townhomes Owners Association (the "Association"), a non-profit Washington corporation.  The Association managed the Waverly Crest Townhomes, a seven-unit condominium in Kirkland, Washington (the "condominium").  Waverly Crest is composed of "units" and "common elements."  The entity that created the condominium conveyed to each unit owner his or her unit plus an undivided interest in the condominium's common elements, which included the exterior walls, roof, grounds, and all other non-unit parts of the condominium.

The Association sued plaintiffs in King County Superior Court in March 2005 (the "underlying litigation").  The complaint alleged that common elements of the condominium were damaged by construction defects and the failure to repair those defects, which allowed water to enter the premises.  The complaint asserted various claims against plaintiffs as the developers of the condominium, and also alleged that plaintiffs breached their fiduciary duties to the Association.  Declaration of Todd Hayes, (Dkt #25) ("Hayes Decl."), Ex. G.

AAIC issued a policy to the condominium for the policy period of March 2002-March

---

[1] No facts are alleged in the complaint regarding Cheryl Willing and Lisa Cole. Apparently, they are named plaintiffs because their marital communities were sued in the underlying litigation and in this case, the couples are suing on behalf of their marital communities.  Because the relevant facts involve Jack Willing and Ron Cole, they will be referred to as "plaintiffs."

ORDER REGARDING CROSS
MOTIONS FOR SUMMARY JUDGMENT - 2

1  2003. The policy included first party property insurance for physical damage to the building and
2  structures of the condominium. The policy also included third party liability coverage for
3  damage that the insured was legally obligated to pay because of, among other things, "property
4  damage" caused by "an occurrence." "Property damage" includes, among other things,
5  "[p]hysical injury to tangible property." "'Occurrence' means an accident, including continuous
6  or repeated exposure to substantially the same general harmful conditions." The policy provided
7  coverage for the condominium and the Association's "directors and 'executive officers'" but
8  "only with respect to their duties as such." Hayes Decl., Ex. F at ¶ XI.A.2.

9  Plaintiffs tendered the underlying litigation to CAU. CAU denied coverage because, it
10 alleged, the complaint did not allege "property damage based on an occurrence" and even if it
11 did, the claim fell within the policy's "owned property" exclusion. Declaration of Joanne Henry
12 (Dkt. #27) ("Henry Decl."), Ex. D. The exclusion bars coverage for "[p]roperty damage to . . .
13 [p]roperty you own, rent, or occupy." The parties agree that the term "you" is defined as and
14 refers only to the Association. Plaintiffs argue that the condominium is "owned" by the
15 individual unit owners of Waverly Crest and not by the Association. Plaintiffs settled the
16 underlying litigation and now seek recovery for their defense and indemnity expenses.

17 **B.    Legal Standards.**

18 On a motion for summary judgment, the Court must "view the evidence in the light most
19 favorable to the nonmoving party and determine whether there are any genuine issues of material
20 fact." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All reasonable inferences
21 supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v.
22 Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might
23 resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W.
24 Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

25 Because this is a diversity case, the Court applies Washington's choice of law rules. See,
26 e.g., Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Insurance Co. N. Am. v.

28 ORDER REGARDING CROSS
MOTIONS FOR SUMMARY JUDGMENT - 3

Federal Express Corp., 189 F.3d 914, 919 (9th Cir. 1999). The parties agree and the Court finds that Washington law applies.

> In Washington, insurance policies are construed as contracts. An insurance policy is construed as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists. If the clause is ambiguous, however, extrinsic evidence of intent of the parties may be relied upon to resolve the ambiguity. Any ambiguities remaining after examining applicable extrinsic evidence are resolved against the drafter-insurer and in favor of the insured. A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.

Panorama Vill. Condo. v. Allstate Ins. Co., 144 Wn.2d 130, 137 (2001) (quoting Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 665-66 (2000)) (internal quotations omitted).

The duty to defend is broader than the duty to indemnify. See, e.g., Truck Ins. Exch. v. Vanport Homes, Inc., 147 Wn.2d 751, 760 (2002). The duty to defend "arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." Id. (internal citation and quotation omitted). The insurer is relieved of the duty to defend only if the claim alleged is clearly not covered by the policy. Kirk v. Mt. Airy Ins. Co., 134 Wn.2d 558, 561 (1998) (internal citation omitted). If the complaint is ambiguous, it will be liberally construed in favor of triggering the insurer's duty to defend. R.A. Hanson Co. v. Aetna Ins. Co., 26 Wn. App. 290, 295 (1980). The Court therefore compares the allegations in the complaint to the policy language to determine if the complaint "sets forth facts which, if proved, would trigger coverage." Truck Ins. Exchange, 147 Wn.2d at 762.

The duty to indemnify is an obligation separate from the duty to defend. See, e.g., N.H. Indem. Co., Inc. v. Budget Rent-A-Car Sys., Inc., 148 Wn.2d 929, 938 (2003). "The duty to indemnify hinges on the insured's actual liability to the claimant and actual coverage under the policy." Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55, 64 (2000).

**C.    Analysis.**

ORDER REGARDING CROSS
MOTIONS FOR SUMMARY JUDGMENT - 4

Courts use a two-step analysis to determine if coverage applies.  See, e.g., Overton v. Consol. Ins. Co., 145 Wn.2d 417, 431 (2002).  First, the Court must determine whether the Association's claims in the underlying litigation fall within the policy's coverage.  Second, the Court must determine whether defendants have carried their burden of showing that the claims are "excluded by specific policy language."  Id. at 431-32.

### 1. "Property Damage Caused by an Occurrence."

Defendants argue that the complaint in the underlying litigation does not allege "property damage caused by an occurrence" against plaintiffs in their capacity as directors.  They argue that some of the paragraphs in the complaint refer to property damage caused by plaintiffs' actions *as developers*, but only the Ninth Cause of Action contains any allegations regarding plaintiffs' duties *as directors* of the Association.  That cause of action alleges breach of fiduciary duty based on a conflict of interest between their roles as developers and directors of the Association, failure to comply with their legal obligations and the bylaws of the Association, and resulting damage.  Hayes Decl., Ex. G. at ¶¶ 94-103.  Defendants argue that any property damage was caused by the developers' actions, and not by plaintiffs' subsequent breaches of their duties as directors.  The underlying complaint, however, alleges that plaintiffs knew that there were leaks into the interior of the structure but did not nothing to repair the leaks, leading to property damage.  See, e.g., id. at ¶¶ 28, 29 ("Defendant LLC and Defendants Willing and Cole did not repair the leaks"), 34-36.  Although those allegations do not specifically cite plaintiffs' role as directors, neither are they limited to plaintiffs' roles as developers.  Instead, the allegations are broad enough to encompass plaintiffs' actions or omissions as directors, particularly because the breach of fiduciary duties claim section incorporates all previous allegations.  See, e.g., Allstate v. Bowen, 121 Wn. App. 879, 886 (2004) (finding "not persuasive" insurer's "contention that there was no duty to defend because the complaint did not specifically allege that the misrepresentations caused the failure of the sewer line and the loss" where the complaint alleged property damage arising from an occurrence).

ORDER REGARDING CROSS
MOTIONS FOR SUMMARY JUDGMENT - 5

Furthermore, in response to interrogatories in the underlying litigation, the Association contended that Willing's acts or omissions, *as an officer of the Association*, caused property damage to the condominium. Hayes Decl., Ex. H at p. 7. Similarly, CAU's claims adjuster testified during his deposition in this case that he understood that the Association was alleging that property damaged occurred because plaintiffs failed to maintain and repair the condominium, in violation of their fiduciary duties:

> Q: When you read paragraphs 33 and 34 of the complaint, did you understand that the association was alleging that because Mr. Willing and Cole failed to maintain and repair the condominium, things that they had a duty to do as a result of their fiduciary duties, that that failure to maintain and repair had resulted in property damage?
>
> A: I understood that, yes.

Hayes Decl., Ex. D (Rule 30(b)(6) testimony of CAU claims adjuster Richard Crooks). Defendants now attempt to disavow Crooks' testimony, but he was their designated Rule 30(b)(6) witness. These discovery statements and the complaint's allegations are sufficient to show that the Association sued plaintiffs for conduct covered by the policy, thereby triggering defendants' duty to defend.

Defendants also allege that pursuant to state statute, any claim for failure to repair or maintain a condominium must be brought against a homeowners association, not against officers or directors. RCW 64.34.328; RCW 64.34.344. Nevertheless, as its discovery responses show, the Association sued plaintiffs for causing property damage, regardless of whether that claim ultimately would have been found to have merit. See, e.g., State Farm Gen. Ins. Co. v. Emerson, 102 Wn.2d 477, 486 (1984) (explaining that the duty to defend "hinges not on the insured's potential liability to the claimant, but rather on whether the complaint contains any factual allegations rendering the insurer liable to the insured under the policy"). Furthermore, defendants have not shown that a breach of fiduciary duty claim was not available based on allegations that the directors' actions exacerbated the property damage by failing to correct the defects. Defendants also rely heavily on Allstate v. Bowen, 121 Wn. App. 879, 887 (2004),

ORDER REGARDING CROSS
MOTIONS FOR SUMMARY JUDGMENT - 6

which held that the property damage in that case was caused by physical conditions and did not "arise from" the subsequent failure to disclose the defects. In this case, unlike Bowen, the Association did not sue plaintiffs solely for failing to disclose information. Rather, it alleged that they failed to act to maintain and repair the premises, in violation of their duties, which caused additional property damage. The policy does not require that plaintiffs' conduct be the sole cause of the damage.[2] For these reasons, defendants are not entitled to summary judgment on this issue.

### 2. The "Owned Property" Exclusion.

Defendants argue that even if plaintiffs' action were covered by the policy, their claim is excluded by the "owned property" exclusion because the Association "owned" or "occupied" the common elements of the condominium. Neither term is defined in the policy. Undefined policy terms are given their "plain, ordinary, and popular meaning." Boeing v. Aetna Cas. & Surety Co., 113 Wn.2d 869, 877 (1990) (internal citation and quotation omitted) (explaining, "To determine the ordinary meaning of an undefined term, our courts look to standard English language dictionaries"). Webster's Third New International Dictionary defines "own" as "to have or hold as property or appurtenance: have a rightful title to, whether legal or natural: possess." Webster's Third New International Dictionary, Unabridged at p. 11612 (Philip Babcock Gove & Merriam-Webster, eds., 3rd ed. 2002). The Association does not hold title to the property. In fact, Washington law states that the common elements are owned solely by a condominium's unit owners. RCW 64.34.020(9); see also Far Nw. Dev. Co., LLC v. Cmty.

---

[2] The complaint does not, as defendants argue, allege that any progressive damage was caused only by the construction defects and not by a lack of maintenance. Instead, the complaint alleges that the failure to repair and maintain exacerbated the problem, including, for example, causing rot. See, e.g., Complaint at ¶ 34 ("As a consequence of the defects and/or lack of maintenance and repair described above, there has been water intrusion into and through the building envelope, exterior and interior building surfaces have deteriorated prematurely, and various building components and other property have been physically damaged, and their useful lives shortened").

ORDER REGARDING CROSS
MOTIONS FOR SUMMARY JUDGMENT - 7

Ass'n Underwriters of Am., Inc., C05-2134RSM (W.D. Wash. April 16, 2007).  In this case, the entity that created the condominium conveyed to each unit owner, and not to the Association, *all* of the real property that comprises the condominium.  This factor undermines defendants' claim and distinguishes this case from State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc., 121 Wn. App. 358 (2004),[3] on which defendants rely.  In that case, the owned property exclusion applied because the insured, an association, owned approximately one quarter of the units at the relevant time.  By virtue of that ownership, it had an undivided ownership interest in the common areas of the condominium that were damaged.  Id. at 361.  Similarly, the fact that the association in English Cove Ass'n, Inc. owned the units prior to selling them to the unit owners shows that there are many circumstances in which an association could "own" or "occupy" premises,[4] undermining defendants' argument that the owned property exclusion would be meaningless unless it covers the circumstances in this case.

Defendants argued in their denial letter and before this Court that the Association both owns and occupies the property because it holds "incidents of ownership" including the obligation to maintain, repair, and insure the condominium's common elements.  Defendants' Cross Motion at p. 15.  They note that the Association has significant statutory rights in the condominium, including the right to "regulate the use, maintenance, repair, replacement and modification of common elements," to "acquire, hold, encumber and convey" them in its own

---

[3] As defendants note, courts should consider exclusions in insurance policies in light of the purpose for which they are included.  English Cove Ass'n, Inc., 121 Wn. App. at 363.  An "'owned property' exclusion is intended to prevent a general liability policy from providing first-party benefits to the insured."  Id. at 361.  That analysis, however, is dependant on but does not answer the question of which party "owned" the property.

[4] As another example, an association could maintain offices on the premises, although the Association in this case did not do so.

ORDER REGARDING CROSS
MOTIONS FOR SUMMARY JUDGMENT - 8

name[5] or with the consent of the unit owners, and to "grant easements, leases, licenses and concessions through or over [them]." RCW 64.34.304(f), (h), & (i). However, "Washington courts have identified the chief incidents of ownership of property as the right to its possession, use and enjoyment, and to sell or otherwise dispose of it according to the will of the owner." English Cove Ass'n, Inc., 121 Wn. App. at 364. There is no evidence that the Association had any of the rights identified by the court in English Cove. For these reasons, the condominium is not property owned by the Association.

Defendants also argue that the Association "occupies" the premises. They note that Black's Law Dictionary defines "occupy" as "[t]o take or enter upon possession of, to hold possession of; to hold or keep for use; to possess; to tenant; to do business in; to take or hold possession. Actual use, possession, and cultivation." Black's Law Dictionary defines "possession" to include exercising power over a thing "to the exclusion of others." Clearly, the Association could not exclude the unit owners from the common elements that they own. The Merriam-Webster Online dictionary defines "occupy" as "to reside in as an owner or tenant;" the Association did neither. Merriam-Webster OnLine, http://www.m-w.com/dictionary/own (last visited on June 29, 2007). That source also includes the definition, "to take or hold possession or control of" as in "enemy troops occupied the ridge." Id. That definition shows that the "control" contemplated in connection with "occupying" typically refers to a physical presence, which the Association did not maintain. Furthermore, if defendants had intended to exclude coverage based on "incidents of ownership" in the property or exercising any type of control over it, they could have done so. In fact, CAU sold the Association a policy after the relevant time period underwritten by a different company, QBE Insurance Company, that included just such an exclusion. Hayes Decl., Ex. I at p. 3 (excluding damage to "[p]roperty you

---

[5] Although the statute does not specify, presumably, an association must own title to a portion of the condominium before it can convey the property "in its own name." RCW 64.34.304(h).

ORDER REGARDING CROSS
MOTIONS FOR SUMMARY JUDGMENT - 9

own, rent or occupy or which is owned, rented or occupied by another but which you are legally obligated to maintain or monitor"). The Court also construes the policy against the drafter. See, e.g., Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 540 (9th Cir. 1990);[6] see also Boeing, 112 Wn.2d at 887 ("The industry knows how to protect itself and it knows how to write exclusions and conditions"). Accordingly, defendants are not entitled to a finding that plaintiffs' claims are barred by the owned property exclusion.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS plaintiffs' motion for partial summary judgment (Dkt. #24) and DENIES defendants' motion for summary judgment (Dkt. #26).

DATED this 5th day of July, 2007.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[6] The court in Kunin explained, "[T]he *contra proferentem* rule is followed in all fifty states . . . , and with good reason. Insurance policies are almost always drafted by specialists employed by the insurer. In light of the drafters' expertise and experience, the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand; if it fails to do this, it should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence."